# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDGETTE REBECCA SYKES,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No.  1:20-cv-00268-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.    INTRODUCTION

On February 21, 2020, Plaintiff Bridgette Rebecca Sykes ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

On December 21, 2015, Plaintiff protectively filed an application for SSI payment, alleging she became disabled on June 10, 1987,[2] due to mood disorder, schizophrenia, back injury, asthma,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 8.)
[2] On June 28, 2018, Plaintiff amended the alleged onset date to December 21, 2015.  (AR 272.)

"eye problems," arthritis, and a large mass in her left thyroid. (Administrative Record ("AR") 15, 252–61, 280.) Plaintiff was born on September 18, 1966, and was 49 years old as of the amended alleged onset date. (AR 23, 275.) Plaintiff completed school through the eleventh grade. (AR 282.)

### A.   Relevant Medical Evidence[3]

#### 1.   Timothy K. Atmajian, M.D.

The record reflects that Dr. Atmajian was involved with Plaintiff's primary care from December 2015 through May 2018, frequently ordering various imaging tests for Plaintiff during that period.[4] (*See* AR 442–44, 446–49, 498–507, 527, 533, 535, 540, 542–46, 553.) On May 15, 2018, Dr. Atmajian submitted a medical source statement on Plaintiff's behalf. (AR 713–14.) Dr. Atmajian noted diagnoses of chronic lower back pain, right shoulder pain, and left ankle chronic pain. (AR 713.) He also stated that Plaintiff has had chronic pain and impaired mobility since 2016 with multiple treatment and little improvement in ambulation. (AR 714.) According to Dr. Atmajian, in an eight-hour workday, Plaintiff could: stand/walk for less than two hours; sit for about four hours; frequently lift and carry less than 10 pounds; occasionally lift and carry 10 pounds; rarely lift and carry 20 pounds; and never lift and carry 50 pounds. (AR 713.) Dr. Atmajian opined that Plaintiff would need to take unscheduled breaks every one to two hours, and that Plaintiff had significant limitations with reaching, handling, and fingering due to her chronic right shoulder pain and hand numbness. (AR 713.) Dr. Atmajian further opined that Plaintiff was likely to be off task for 25 percent or more of a typical workday due to her symptoms and she was likely to be absent from work more than four days a month. (AR 713.)

#### 2.   Consultative Examiner Tomas Rios, M.D.

On March 23, 2016, Dr. Rios, an internal medicine physician, conducted a comprehensive internal medicine evaluation of Plaintiff. (AR 451–55.) Plaintiff's chief complaints were chronic back pain and asthma. (AR 451.) After examining Plaintiff, Dr. Rios assessed Plaintiff's physical residual functional capacity ("RFC")[5]. (AR 454–55.) Dr. Rios opined that Plaintiff had no standing,

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.
[4] Plaintiff testified that she often saw Dr. Atmajian's physician assistant, "Rita." (AR 106–07.)
[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social

walking, sitting, or manipulative restrictions, and that she could lift 25 pounds occasionally and 10 pounds frequently. (AR 454–55.) Dr. Rios further opined that Plaintiff could occasionally climb steps, stairs, ladders, scaffolds, and ropes; and frequently stoop, crouch, kneel, and crawl. (AR 455.) In light of Plaintiff's asthma, Plaintiff should be precluded from working around chemicals, dust, fumes, and gases. (AR 455.)

**B.   Administrative Proceedings**

The Commissioner initially denied Plaintiff's application for SSI on April 14, 2016. (AR 180–83.) Plaintiff's application was denied again on reconsideration on July 15, 2016. (AR 184, 188.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 195.) At the hearing on July 13, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 69, 71–98.)

**C.   The ALJ's Decision**

In a decision dated January 10, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–24.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 17–24.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 21, 2015, the amended onset date (step one). (AR 17.) At step two, the ALJ found Plaintiff's following impairments to be severe: a history of polysubstance abuse in sustained full remission, asthma, psychotic disorder not otherwise specified, degenerative disc disease of the lumbar spine, major depressive disorder, schizo-disorder, large thyroid mass, low vision, posttraumatic stress disorder, a history of possible substance induced psychotic disorder with hallucinations, and a history of ankle fracture status post open reduction internal fixation in October 2016. (AR 18.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and

---

Security Ruling ("SSR") 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours and sit six hours in an eight-hour workday, never climb ladders, ropes and scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] should avoid concentrated exposure to extreme temperatures, wetness, humidity, vibration, pulmonary irritants, and hazards. She can have no more than occasional face-to-face interaction with the general public, supervisors, and coworkers. She cannot understand, remember, and/or apply information necessary to perform complex and detailed work or make judgements on complex and detailed work related job assignments or cope with the stress normally associate [sic] with semi-skilled or skilled employment. In addition, [Plaintiff] must use a four-wheeled walker for uneven terrain walking or even terrain walking of more than 10 yards each hour.

(AR 19.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 20.)

The ALJ determined that Plaintiff had no past relevant work (step four). (AR 23.) Ultimately, the ALJ concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically solderer production line, Dictionary of Operational Titles ("DOT") code 813.684-022, and inspector hand packager, DOT code 559.687-074 (step five). (AR 23–24.)

Plaintiff subsequently sought review of the ALJ's decision before the Appeals Council, which denied review on December 23, 2019. (AR 1, 7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

However, "[a]n individual shall be determined to be under a disability only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record

5

as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the

party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.   DISCUSSION

**A.   The ALJ Erred in Evaluating Treating Physician Dr. Atmajian's Opinion**

**1.   Legal Standard**

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

"To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining

7

professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

**2.   Analysis**

Plaintiff alleges—and the record reflects—that Dr. Atmajian was Plaintiff's treating physician. (*See* AR 713.) In a medical source statement submitted on Plaintiff's behalf on May 15, 2018, Dr. Atmajian opined to extreme limitations on Plaintiff's ability to work, including that Plaintiff is limited to walking and standing for fewer than two hours in an eight-hour workday. (AR 713–14.)

In weighing Dr. Atmajian's opinion, the ALJ stated:

> The undersigned gives this opinion limited weight, as not fully consistent with the treatment record or [Dr. Rios's] consultative examination report discussed above. Although Dr. Atmajian notes these limitations appropriate as of 2016, they are not appropriate based upon the examination findings at that time.

(AR 22).

In sum, the ALJ rejected Dr. Atmajian's opinion because it was inconsistent with the

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

8

objective medical record. Additionally, as the ALJ found that Dr. Atmajian's opinion was contradicted by the opinion of examining physician Dr. Rios—who opined that, *inter alia*, Plaintiff had no limitations on her abilities to walk and stand—the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Atmajian's opinion in favor of a non-treating source opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

To reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Magallanes*, 881 F.2d at 751 (citation omitted). Here, in cursorily asserting that Dr. Atmajian's opinion was inconsistent with the medical record, the ALJ failed to satisfy the specific and legitimate standard as set forth by the Ninth Circuit. The ALJ merely stated that Dr. Atmajian's opinion was "not fully consistent with the treatment record or [Dr. Rios's] consultative examination report" and that Dr. Atmajian's opined limitations were "not appropriate based upon the examination findings." (AR 22.) There are no citations to the medical evidence in the ALJ's brief discussion of Dr. Atmajian's opinion, and the ALJ did not identify the "examination findings" and other treatment-record evidence that he believed were inconsistent with the limitations identified by Dr. Atmajian. Because the ALJ failed to elaborate on his reasoning and point to specific conflicts with the medical record, the Court concludes that the ALJ failed to provide a specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Atmajian's opinion.

Relying on the ALJ's summation of the medical evidence, the Commissioner contends that the ALJ did in fact identify specific conflicts between Dr. Atmajian's opined limitations and the record. (Doc. 17 at 9.) But "[s]imply reciting evidence does not explain why [the physician]'s opinion is not persuasive, or why the ALJ's conclusions are correct." *Wendy T. v. Comm'r of Soc. Sec.*, No. 20-1439-BAT, 2021 WL 1976953, at *3 (W.D. Wash. May 18, 2021). Although the ALJ summarized the medical evidence and findings relating to Plaintiff's physical impairments, he failed to relate those findings to Dr. Atmajian's limitations and to explain how that evidence contradicted Dr. Atmajian's opinion. *See Frias v. Saul*, No. 1:20–CV–00097–JLT, 2021 WL 1811992, at *8

(E.D. Cal. May 6, 2021) ("The ALJ should clearly explain how identified findings conflict with specific limitations and not leave it to the Court to speculate as to the basis of his opinion. Without more, the ALJ failed to meet the level of specificity required by the Ninth Circuit to reject a treating physician's opinion as conflicting with other medical opinions."). Therefore, the ALJ erred in his evaluation of Dr. Atmajian's opinion.

**B.     The ALJ's Error Was Not Harmless**

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054. As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless " 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity' " (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.' " *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the Commissioner does not contend that any error by the ALJ in evaluating Dr. Atmajian's opinion was harmless, and the record establishes that the ALJ's error was not harmless. If the ALJ had properly evaluated Dr. Atmajian's opinion and included any of the significant limitations to which Dr. Atmajian opined, that may have changed the disability determination. Thus,

the error was not "inconsequential to the ultimate nondisability determination," *see Molina*, 674 F.3d at 1115, and was not harmless.

**C.     Remand Is Warranted**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful. If the ALJ changes his evaluation of Dr. Atmajian's opinion, he should incorporate any warranted additional limitations in the RFC. Conversely, there may be specific and legitimate reasons the ALJ can offer for discounting the opinion. *Cf. Voisard v. Berryhill*, No. 2:17–CV–1023–EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Dr. Atmajian's opinion and adjust his RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled because she has the RFC to perform the requirements of other work that exists in significant numbers in the

national economy. The ALJ may also elect to further develop the record, if deemed necessary. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[ ]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

On remand, the ALJ should reevaluate Dr. Atmajian's opinion and address any necessary changes to the RFC determination. If the ALJ again discounts Dr. Atmajian's opinion, he can then provide an adequate discussion of the specific limitations he is discounting and the specific evidence that contradicts Dr. Atmajian's opinion. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016). The ALJ must also reevaluate his conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's RFC.

### V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Bridgette Rebecca Sykes and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **June 11, 2021**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE